ICHABOD J. WILLIAMS *et al.*, *v.* CHARLES G. COLBY *et al.*

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Corporations. Liability.*—Where the members of a firm organize themselves into a corporation, and by resolution assume all the debts of the firm, whose assets they propose to seize upon, they cannot annul the resolution by a secret understanding of the trustees, that it was not intended to include a particular firm claim and thus absolve themselves from liability to a firm creditor.
2. *Same.*—In such a case, a firm creditor can follow the assets into the hands of the corporation, and assert his right to their application to the payment of his debt.
3. *Same. Surrender of note.*—Where the surrender of notes is procured by fraud, but without an intention to release anybody or anything, or, to discharge the debt, the debt remains, and the creditor has a right to recover upon it.

Appeal from an order confirming the report of a referee, in favor of the validity of a claim against the corporation in the hands of a receiver.

*Albert B. Boardman*, for receiver, appellant.

*F. R. Minrath*, for respondent.

VAN BRUNT, P. J.—In March, 1886, Jacob Christie, Charles C. Colby and William H. Duncan organized the firm of Christie & Co. This firm, prior to May, 1887, had become indebted to Minna Biesler in the sum of $25,000, for which she held note and receipts. Shortly prior to this month the name of said firm was changed to Colby, Duncan & Co. the partners remaining the same.

On May 17, 1887, the corporation known as Colby, Duncan & Co. was duly organized under the laws of this state and on the fourteenth day of June, following, said corporation resolved to purchase the pianoforte manufacturing business of the firm of Colby, Duncan & Co. and assume all the legal responsibilities of said firm, which purchase was carried into effect.

It is conceded by the appellant that the resolution was broad enough in terms to cover the claims in question, but it is urged that the evidence showed that it was not intended to include this claim of the respondent in the assumption of liabilities, and that in making up the figures on which the amount of stock to be issued was agreed upon, this claim was ignored.

It might be a sufficient answer to this bold attempt to defraud the claimant out of her rights in respect to the assets of the firm of Colby, Duncan & Co. that no matter what these trustees had in mind in respect to this matter, the action of the corporation, as evidenced by the resolution passed, was an assumption of all the debts of the firm whose assets they proposed to seize upon, which resolution could not be annulled by the secret understanding of the trustees that the resolution should not mean what it said. This corporation composed of the same individuals as the firm, could not seize upon the assets of the firm and withdraw them

from the creditors of the firm. If they could do this as to one creditor they could do it as to all, a proposition too monstrous to need a moment's discussion.

The claimant, if such had been attempted by this firm and corporation, could have followed these assets into the hands of this corporation, which was not an innocent purchaser for value, and asserted her right to their application to the payment of her debt.

Indeed, this idea that the corporation had not assumed the respondent's debt seems to have been an after-thought, because, when application was made to the corporation for payment, no repudiation of the obligation of the corporation was ever made, but all efforts were directed to the cooling down of the respondent in order that they might have time to get up some plan by which they might, by some trick, get the respondent to do something which would release the firm and corporation from the debt, and it is urged that, by the proceedings which took place on the 28th of June, these honorable gentlemen succeeded in inducing the respondent to accept in payment of her claim the individual note of one of the members of the firm, and some stock of this insolvent corporation as security, thus relieving the other two members of the firm, and all its assets, from any claim she might have.

The evidence shows that she gave up the notes of the firm, but there is no evidence that she intended thereby to release anybody. In fact the evidence shows that such surrender was procured by the most deliberate fraudulent representations as to the effect of the Williams note, and shows that the respondent had no intention to release anybody or anything.

Nor is there anything in the agreement signed by the respondent on that day which conflicts with this view. The respondent had the Williams note as collateral to her debt, and he gave her, as additional security, some of the valuable stock of this corporation, and all that the agree-

ment contains is an agreement to return stock when note is paid, or a right to sell same if unpaid. There is no evidence that she intended to release anybody, but, on the contrary, she refused to accept stock in payment of her note.

The notes not being given up with any intent to discharge the debt, it is immaterial what became of them. The debt remained and the respondent has the right to recover upon it.

It seems to us that it would be a travesty upon justice if such a transparent scheme to defraud could, under any of the principles of law, succeed.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

DANIELS and BARTLETT, JJ., concur.