## METROPOLITAN NATIONAL BANK *v.* CLAGGETT.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 1064. ·Submitted October 19, 1891. — Decided November 9, 1891.

When a state bank acting under a statute of the State calls in its circulation issued under state laws, and becomes a national bank under the laws of the United States, and a judgment is recovered in a court of the State against the national bank upon such outstanding circulation, the defence of the state statute of limitations having been set up, a Federal question arises which may give this court jurisdiction in error.

The conversion of a state bank in New York into a national bank, under the act of the Legislature of that State of March 9, 1865 (N. Y. Laws of 1865, c. 97) did not destroy its identity or its corporate existence, nor discharge it as a national bank from its liability to holders of its outstanding circulation, issued in accordance with state laws.

The provisions in the statute of New York of April 11, 1859 (Laws of 1859, c. 236) as to the redemption of circulating notes issued by a state bank and the release of the bank if the notes should not be presented within six years do not apply to a state bank converted into a national bank under the act of March 9, 1865, and not "closing the business of banking."·

THE court stated the case as follows:

This was a motion to dismiss a writ of error to the Supreme Court of the State of New York to review its judgment

against the plaintiff in error, with which was united a motion to affirm that judgment if the motion to dismiss be denied.

The case arose upon a complaint filed in the Supreme Court of New York June 4, 1886, by the defendant in error and another, as administrators of the goods, chattels and credits of James H. Paine, deceased, against the plaintiff in error, the Metropolitan National Bank, demanding judgment against the latter for $12,300, and interest from May 21, 1886, that being the aggregate amount due on eighty-four bank bills issued by the Metropolitan Bank of New York, for the payment of which it was claimed that the plaintiff in error was liable. The complaint alleged that, at the time of the issue of the bank bills sued upon, the Metropolitan Bank of New York was a state bank duly organized and doing banking business under the law of the State of New York, having authority to issue such bills and to put the same into circulation as money; that from 1858 to 1861 it issued each of the eighty-four bills therein described, and prior to 1862, for a valuable consideration, delivered the same to James H. Paine, the intestate of the plaintiffs; that the bills thereupon became his property, and remained in his ownership and possession until his death; that the plaintiffs, as administrators of his goods and effects, duly appointed and qualified, having become the owners and holders thereof, presented the same on the 21st of May, 1886, to the Metropolitan National Bank, the plaintiff in error, for payment, which was refused; that on the 14th of March, 1865, pursuant to the act of Congress of June 3, 1864, and the act of the legislature of New York of March 9, 1865, the said state bank became and still is a national bank for carrying on the business of banking under the name of the Metropolitan National Bank; and that, by virtue of the laws of the United States and its own voluntary action, the said Metropolitan National Bank, plaintiff in error, received and became vested with all the assets of the Metropolitan Bank of the State, and assumed and became liable to pay its obligations, including the bank bills described in said complaint.

Three defences were set up in the answer to the complaint: (1) A denial that the plaintiff in error had at any time as-

sumed or, by any of its acts, become liable to pay the bills of the Metropolitan Bank of New York, which was a state bank doing business under the laws of the State of New York. (2) That in 1865 plaintiff in error became a national bank under the laws of Congress, doing the business of banking, as such, by virtue of the laws of the United States, under the corporate name of the Metropolitan National Bank, and that the Metropolitan Bank of New York (the state bank) went through certain proceedings, under the New York statutes, of notice, publication and deposit with the superintendent of banking of that State, for the redemption of its circulating bills, on the ground of its closing business, whereby its liability and that of the plaintiff in error on these bills (they not being presented for payment in due time) ceased six years from March 14, 1867. (3) That the cause of action was barred by the statute of limitations of the State of New York.

The action being at issue upon the pleadings and having come on for trial before the court without a jury, the parties having expressly waived a jury trial, the court made a finding of facts which substantially accorded with the averments of the complaint, and rendered judgment in favor of the plaintiff below, the defendant in error herein, for the sum of $12,300, and interest thereon from May 21, 1886, and costs. 4 N. Y. Supplement, 115. This judgment was affirmed by the general term of the Supreme Court of New York, 56 Hun, 578; and subsequently by the Court of Appeals of New York. 125 N. Y. 729. Hence this writ of error. The defendant moved to dismiss the writ, on the ground that this court had no jurisdiction to review the judgment of the state court of New York, and that no Federal question was raised or decided in the court below or appeared upon the record.

[The material part of the statutes of New York referred to will be found in the margin.]

_____

An Act in relation to the bank department. Passed April 11, 1859. Laws of 1859, c. 236, p. 503.

"1. Whenever any banking association, individual banker, receiver of a banking association, assignee or assignees of an individual banker, shall

*Mr. Leslie W. Russell* for the motions, on the question of jurisdiction, said:

have given notice to the superintendent of their intention to close the business of banking, or the trustees or legal representatives of any incorporated bank whose charter has expired, or the receiver of any incorporated bank, which shall have been declared insolvent, shall have redeemed at least ninety per cent of their circulating notes, outstanding at the date of such notice, expiration of charter or declaration of insolvency, they shall be entitled to deposit with the superintendent, and he is hereby authorized to receive, a deposit of money equal to the amount of the outstanding circulation at the time of such deposit, to be placed by him in some bank in the city of Albany, in good credit, upon the receipt of which it shall be lawful for the superintendent to give up all other securities theretofore deposited with him for the redemption of circulating notes issued thereon.

"2. Upon the receipt of such deposit the superintendent shall immediately give notice in the state paper, and at least one newspaper in the county where such bank, banking association or banker shall have been located or doing business, which notice shall be published at least once a week for six months successively, that the notes of such bank, banking association or banker will be redeemed by him, at the bank where such deposit is made, at par; and that all the outstanding circulating notes of such bank, banking association or banker, must be so presented for redemption within six years from the date of such notice, and all notes which shall not be thus presented for redemption and payment within the time specified in such notice, shall cease to be a charge upon the funds in the hands of the superintendent for that purpose.

"3. At the expiration of such notice, it shall be lawful for the superintendent to surrender, and such bank, banking association, banker, receiver, assignees or trustees, or their legal representatives, shall be entitled to receive from him all the money remaining in his hands after such redemption, except so much thereof as may be necessary to pay the reasonable expenses chargeable against the said accounts, including the payment for the publication of the above mentioned notices.

"4. All circulating notes of such bank, banking association or banker, which shall not have been presented for payment within the period required by such notice, shall, upon the expiration of such period, cease to be a lien or charge upon the property and effects of such bank, banking association or banker, in the hands of such receivers, assignees, trustees or otherwise; and all liability of such receivers, assignees, trustees, banks, banking associations or bankers, for or on account of any circulating notes, which shall not have been presented within the time aforesaid, shall also cease."

AN ACT *enabling the banks of this State to become associations for the purpose of banking under the laws of the United States.* Passed March 9, 1865. Laws of 1865, c. 97, p. 169.

"§ 2. Any bank incorporated or organized by authority of this State,

.The rules in regard to jurisdiction in these cases are well settled. If the facts of the case are broad enough to sustain the judgment on grounds entirely aside from any Federal question, (if one exists,) and the state court puts its judgment on those grounds, no case is made for review here. *Murdock* v. *City of Memphis,* 20 Wall. 590; *Jenkins* v. *Loewenthal,* 110 U. S. 222; *Johnson* v. *Risk,* 137 U. S. 300.

To give this court jurisdiction, it must appear affirmatively not only that a Federal question was presented for decision to the highest state court having jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it. *DeSaussure* v. *Gaillard,* 127 U. S. 216.

Although a case from the highest court of a State may involve a Federal question, yet if that court proceeds upon another and distinct ground, not involving a Federal question, and sufficient in itself to maintain the final judgment without reference to the Federal question involved, its judgment will be affirmed here. *Beaupré* v. *Noyes,* 138 U. S. 397.

In determining the ground upon which a judgment in a state court was rendered, this court may refer to the opinion of that court; and when it does not appear upon what ground the *highest* court of a state placed its judgment, (which is the case at bar,) and the judgment may be supported without deciding a Federal question, this court is without jurisdiction of it

---

which shall become an association for carrying on the business of banking under the laws of the United States, shall be deemed to have surrendered its charter if it shall have complied with the requirements of this act; provided, that every such bank shall nevertheless be continued a body corporate for the term of three years after the time of such surrender, for the purpose of prosecuting and defending suits by and against it, and of enabling it to close     concerns and to dispose of and convey its property; but not for the purpose of continuing under the laws of this State the business for which it was established."

"§ 8. Nothing in this act shall be construed as releasing such association from its obligations to pay and discharge all the liabilities created by law or incurred by the bank before becoming such association, or any tax imposed by the laws of this State up to the date of its becoming such association, in proportion to the time since the next preceding payment therefor."

in error. *Wood Mowing Machine Co.* v. *Skinner*, 139 U. S. 293.

*Mr. Charles A. Peabody* for appellee, on the merits said:

The court did not hold the plaintiff in error liable because the state bank transferred its assets to the plaintiff in error.

If it did, such transfer took place more than twenty years ago, and the six years' statute of limitations would apply.

The mere transfer of property from A to B does not create a common law liability on the part of B to pay A's creditors. A creditor of A may obtain judgment and by a suit in equity get a lien upon the property transferred to B and by proceedings in equity recover his debt. But here also the statute of limitations would apply, and this court will not assume that the New York court ignored that defence which was duly set up in the answer.

The only way the judgment can be sustained is by holding that the contract of the state bank became the contract of the national bank without any change or modification.

The plaintiff in error became a corporation without the aid of the laws of New York. From abundant caution it complied with all the provisions of the act of 1865. The state law could not impose on the plaintiff in error the obligations of another corporation and it did not attempt to do so. The most that the state law says is that the law should not be construed as releasing the obligations of the old bank. No searching of the law will discover any provision making the two banks identical.

The question involved is not a frivolous one. The New York Court of Appeals, *City Bank* v. *Phelps*, 86 N. Y. 484, 491, says this question "is not so easy of concession or refutation as it may seem at first sight."

A judgment for over $14,000 has been obtained against a corporation created by the national authority upon contracts which it never made and never assumed. Although a corporation during its existence continues to be the same body, the stockholders, whose property the corporation holds, change;

and after twenty-five years very few persons are probably now interested in this matter who were stockholders of the plaintiff in error in 1865. The present directors are trustees winding up a closing bank, and it is their duty to ascertain with care who are the true creditors of the bank.

MR. JUSTICE LAMAR, after stating the case, delivered the opinion of the court.

The first assignment of error is as follows:

"That the Metropolitan National Bank, the plaintiff in error, which was created under the act of Congress entitled 'An act to provide a national currency secured by the pledge of United States bonds, and to provide for the circulation and redemption thereof,' approved June 3, 1864, is held liable to pay the bills described in the complaint, which were made by the Metropolitan Bank, a corporation created under the law of the State of New York, entitled 'An act to authorize the business of banking,' passed April 18, 1838."

The second defence set up in the answer, as we have seen, is, that the defendant below (the plaintiff in error) became a national bank under the authority of the act of Congress of 1864, entitled "An act to provide a national currency secured by the pledge of United States bonds, and to provide for the circulation and redemption thereof," and thereby acquired immunity from liability for the bank bills issued by the state bank. The court found that the plaintiff in error did become a national bank doing a banking business under the laws of the United States, but decided that it did not thereby acquire an immunity from liability to pay the bank bills of the Metropolitan Bank of New York, upon the ground that the proceedings set up in the answer did not terminate the existence of the state bank, but simply effected a continuation of the same body under a changed jurisdiction. In this we think the record presents a claim of Federal immunity raised by the plaintiff in error and denied by the court, which brings the case within the jurisdiction of this court; and upon the authority of *McNulta* v. *Lochridge*, decided at this term of the court, *ante*,

327, the motion to dismiss is denied. But as the record also shows there was color for the motion to dismiss, it is proper that we should proceed to a review of the judgment of the court below.

The question we are to consider here is, did the court err in holding that the plaintiff in error was not exonerated from liability either by its becoming a national bank or by the proceedings for the redemption and retirement of its circulating bills issued whilst a state bank, which proceedings, it was claimed, were in strict observance of every requirement of the New York statute of 1859 in relation thereto, or by the statute of limitations of the State of New York? The court decided that the New York statute providing for a redemption of circulating notes and for releasing the bank, if the notes were not presented in six years, applied alone to banks "closing the business of banking;" that the change or conversion of the Metropolitan Bank into the Metropolitan National Bank did not "close its business of banking" nor destroy its identity or its corporate existence, but simply resulted in a continuation of the same body with the same officers and stockholders, the same property, assets, and banking business under a changed jurisdiction; that it remained one and the same bank, and went on doing business uninterruptedly; and that, therefore, the statutory proceedings relied upon in the answer could not operate as a bar to the liability of either bank to pay the bills delivered by the Metropolitan Bank in 1861 to plaintiffs' intestate.

This decision is so manifestly correct that it needs no argument to sustain it. The judgment is, therefore,

*Affirmed.*

The CHIEF JUSTICE, MR. JUSTICE BRADLEY and MR. JUSTICE GRAY took no part in the consideration a ' disposition of this motion.