(28 App. Div. 264.)

## GOLDMARK v. MAGNOLIA METAL CO.

(Supreme Court, Appellate Division, First Department.   April 15, 1898.)

1. ATTACHMENT—SUFFICIENCY OF BOND.
    Though the question as to whether one or more sureties shall execute the
    bond in attachment is, under Code Civ. Proc. §§ 640, 811, to be determined
    by the judge granting the writ to whom the bond is presented for approval,
    two sureties, if individuals, should be required.

2. SAME—HEARING OF MOTION TO VACATE.
    Though, on a motion to vacate an attachment, it is the duty of the court
    to examine the complaint with a view of seeing if it is frivolous, its suffi-
    ciency is not to be discussed and treated with the same elaboration as when
    presented on demurrer.

3. SAME—SUFFICIENCY OF COMPLAINT.
    A complaint in an action to recover from defendant corporation an amount
    due under a contract, executed before defendant was organized, between
    plaintiff and another corporation, alleged that the old corporation procured
    the incorporation of defendant, and that when the latter took all the prop-
    erty of the former it knew of the existence of the agreement, and there-
    after treated and recognized it as valid, and paid all the debts of the old
    company.   There was some evidence from one of the affidavits on which
    an attachment was granted that the new company assumed the payment of
    the liabilities of the old.   Held, on a motion to vacate the attachment, that
    the complaint stated facts sufficient to constitute a cause of action against
    defendant.

    Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from special term.

Action by Adolph Goldmark against the Magnolia Metal Com-
pany, impleaded with others.   From so much of an order as denies
a motion made by defendant the Magnolia Metal Company to vacate
an attachment, that defendant appeals.   Affirmed.

In September, 1890, the Magnolia Anti-Friction Metal Company, upon sufficient
consideration, promised to pay to the plaintiff one cent per pound on all sales
of Magnolia metal in Austria and Italy for a period of five years thereafter.
These sales were to be made during the period mentioned through a London
firm, called the Magnolia Anti-Friction Metal Company of Great Britain. Be-
tween March 1, 1893, and March 1, 1895, that firm sold in the countries named
951,337 pounds of the metal, which fact the plaintiff learned from the firm itself
and its bookkeeper, Mr. William E. Watson.   In May, 1893, the defendant Mag-
nolia Anti-Friction Metal Company caused to be organized the Magnolia Metal
Company, under the laws of West Virginia, the former surrendering to the new
company its assets, business, good will, and place of business, and itself ceased
to do business.   The entire issue of capital stock of the new company was dis-
tributed pro rata among the shareholders of the old company, the consideration
for its issue being solely the assets and good will of the old company; and the
stockholders, assets, business, and place of business of the two companies were
identical.   The only asset claimed to be retained by the old company, and not
surrendered to the new, was the patent formula, but a perpetual license to use
the patent was given to the new company, and it thereafter went on and manu-
factured the metal without objection.   The directors and managers of the two
companies continued practically the same, and the business went on without
change or interruption.   There was neither increase nor diminution of assets.
The old company was a corporation organized under the laws of New York.
The attachment herein was granted against the new company, a West Virginia
corporation.   The motion to vacate the attachment was placed upon two grounds:
(1) That the moving affidavit does not support the warrant by any competent
proof as to the amount due, if any, under the contract; and (2) that the com-
plaint does not state facts sufficient to constitute a cause of action against the
Magnolia Metal Company.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

Alexander S. Bacon, for appellant.
L. A. Gould, for respondent.

O'BRIEN, J.    The proof as to the amount due, which is based upon the sale of metal in Italy and Austria, is founded upon information which the plaintiff says he obtained from the Magnolia Anti-Friction Metal Company of Great Britain and their bookkeeper, one Watson, which firm, the plaintiff states, was the agent of the appellant.    The latter criticises the sufficiency of such statements as competent proof of the facts, upon the ground that the plaintiff does not show how he knew that the London firm were its agents, and does not state from what particular member of the firm, in addition to the bookkeeper, he received the other information.    We think that a moment's consideration will show that these objections are hypercritical.    In addition to the original affidavits. we have those of the appellant on which the motion to vacate the attachment was made, and the replying affidavits of the plaintiff; and upon all of these we are to determine whether the attachment was properly granted.    It therefrom appears, beyond question, that the firm that handled the Magnolia metal in Great Britain was the one stated by the plaintiff to be the defendant's agent; and the only dispute arising is that the appellant insists that the firm were not its agents, but that the metal which they handled was sold directly to them.    This fact, however, as to whether they handled the metal as agents or as the result of a contract of absolute sale, is entirely immaterial, if in fact the firm did sell in Austria and Italy the metal on which the plaintiff bases his claim for compensation, as under his alleged contract he was entitled to the agreed sum on all metal sold in Italy and Austria during the years specified, no matter under what arrangement, or by whose direct agency.    The important and material thing for the purposes of the attachment was to show that the plaintiff had received information from a reliable source furnishing him with the data upon which to base his claim for compensation, and from which it could be seen that he had presented a prima facie case entitling him to the amount stated in his complaint, and for which the attachment was issued.

The insistence that the affidavit does not allege the plaintiff's belief in the truth of the allegations made to him is also untenable. The plaintiff was not obliged continually to repeat that on information and belief he alleged each fact, for in his complaint he states the facts which constitute his cause of action, and that is verified in the usual form, in which he asserts that it is true to his own knowledge, "except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true"; and from his affidavit used in support of the complaint we have a full statement as to what the plaintiff alleges of his own knowledge and what is upon information.

It is further objected that the undertaking on the attachment was

insufficient, because the plaintiff joined with one other person, while the practice requires two sureties other than the plaintiff. Section 640 of the Code of Civil Procedure provides that the judge "must require a written undertaking upon the part of the plaintiff, with sufficient sureties." Of course, adding the name of the plaintiff to the undertaking does not strengthen it in any way, as he is liable for damages, irrespective of the undertaking, and cannot be regarded as other than a principal. So that when the Code speaks of "sureties" it means, in addition to the plaintiff, if he signs the undertaking, more than one surety. Section 811 of the Code, however, to some extent modifies this by declaring that, "where a provision of this act requires a bond or undertaking, with sureties, to be given by, or in behalf of, a party or other person, he need not join with the sureties in the execution thereof, unless the provision requires him to execute the same; and the execution thereof by one surety is sufficient, although the word 'sureties' is used, unless the provision expressly requires two or more sureties." While, therefore, the question as to whether one or more sureties shall execute an undertaking is to be determined by the judge granting the attachment, to whom the undertaking is presented for approval, yet we think it proper to call attention to the fact that in this department it has been the invariable practice to require two sureties, if individuals, although this rule has been relaxed where, in lieu thereof, a responsible surety company has become liable on the undertaking.

This brings us to the most serious question involved,—as to whether the complaint states facts sufficient to constitute a cause of action against the appellant, the Magnolia Metal Company. In this action the plaintiff seeks to charge that company directly upon a common-law liability for breach of contract, and such an action is not to be confounded with a suit in equity, brought by a creditor to reach the assets of a firm or corporation which have been transferred to an entirely new and different concern or corporation. In substance, the complaint alleges that the contract was made with the Anti-Friction Company, and there is no distinct allegation that the Magnolia Company expressly assumed the obligations of the Anti-Friction Company. It is claimed, however, that notwithstanding the absence of such an allegation, taking the facts as true,—which we must do in determining the sufficiency of the complaint,—it is made to appear that the organization doing business under the present name, Magnolia Metal Company, is liable upon the contracts entered into under the former name of the Magnolia Anti-Friction Metal Company. Leaving out of consideration cases where the transfer from the old to the new corporation amounts to a fraud upon creditors, wherein it has been held that the latter could follow the assets in the hands of the new company, it must be regarded as the general rule that the liability of the new corporation for the debts of the old does not result from operation of law, but must follow from the contract relation based upon the assumption of the debts of the old corporation by the new. As with other general rules, however, there would appear to be exceptions thereto; one class of exceptions, as claimed, be-

ing exemplified in the well-considered decision of Austin v. Bank, 49 Neb. 419, 68 N. W. 628, by "cases where, as in Reed v. Bank, 46 Neb. 168, 64 N. W. 701, the circumstances attending the creation of the new corporation and its succession to the business, franchise, and property of the old are such as to raise the presumption or warrant the finding that it is a mere continuation of the former,—that it is, in short, the same corporate body under a different name." Another instance cited is that of Bank v. Phelps, 97 N. Y. 51, which was a case of a state bank transformed into a national bank under the provisions of the national banking act, wherein it was said:

"Although, in form, the property and rights of state banks purport to be transferred to them in their new status of national banks, yet, in substance, there is no actual transfer from one body to another, but a continuation of the same body under a changed jurisdiction. As between it and those who have contracted with it, it retains its identity, notwithstanding its acceptance of the privilege of organizing under the national banking act."

In the case of Bank v. Claggett, 141 U. S. 527, 12 Sup. Ct. 60, which arose originally in this state, the judge writing the opinion of the court says:

"The change or conversion of the Metropolitan Bank into the Metropolitan National Bank did not close its business of banking, nor destroy its identity or its corporate existence, but simply resulted in a continuance of the same body, with the same officers and stockholders, the same property, assets, and banking business, under a changed jurisdiction; that it remained one and the same bank, and went on doing business uninterruptedly."

It was therein held that the change from a state to a national bank did not destroy its identity or its corporate existence, or discharge it as a national bank from its liability to holders of its outstanding circulation issued in accordance with state laws. And in Williams v. Colby (Sup.) 6 N. Y. Supp. 459, the presiding justice of this court said:

"This corporation, composed of the same individuals as the firm, could not seize upon the assets of the firm, and withdraw them from the creditors of the firm. If they could do this as to one creditor, they could do it as to all,—a proposition too monstrous to need a moment's discussion."

See, also, Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co., 10 Fed. 600; Mott v. Insurance Co., 16 Fed. 140; New York & B. Ferry Co. v. City of New York, 146 N. Y. 145, 40 N. E. 785.

In the bank cases above cited, it is true, the transition is effected pursuant to statute, while here it was the result of the consent and vote of the stockholders. But in both the question must relate to the legal effect of the transition, when accomplished, upon the rights of creditors of the body corporate in its original form as a domestic corporation, and to whether such creditors can enforce their claims at law against the foreign corporation into which the original body corporate has been transformed without any express assumption of such claims or recognition thereof by the new corporation. It is insisted that in the case at bar the transfer of the capital, assets, and good will of the business, and the continuance thereof under a new organization and changed name, are analogous to a transfer of the capital, assets, and business of a state bank, and the continuance thereof under a new name, to an organization created pursuant to the

national banking act, for the reason that in each case the officers, directors, stockholders, assets, and business continue the same, but the name is changed, and the domestic corporation transfers the jurisdiction to which it owes allegiance, and continues as a foreign corporation. It will be seen, therefore, that the plaintiff, while recognizing the principle that a firm or corporation, in the absence of an agreement to that effect, does not become liable for the debts of another firm or corporation whose assets it may have purchased or taken over, bases his right to recover upon the identity of the two corporations. In other words, the plaintiff's position is that, while there has been a change of dress, a removal to another jurisdiction, and the assumption of a new name, it is the self-same identical body that obtains and holds all the property and assets just as it formerly owned and held them, and chargeable likewise with the same liabilities; that, while there may have been a formal change of place and name, it is, in substance, the same body, possessed of the same rights, in possession and control of the same property, and liable for the same obligations. This question is a novel one, and by no means free from doubt. But, while we do not decide it, we wish to point out that it is not to be confused or obscured by cases cited by the appellant of an insolvent concern going out of existence, and transferring its assets to a new corporation, which continues its business with fresh capital and added parties, or of an insolvent corporation reorganized through a foreclosure, in order to scale down its debts, for here there is no insolvency, no added shareholders, no new capital; and, though there is a formal, there is no actual, transfer of title, or even real change of possession, it being an arrangement which, as said in Bank v. Claggett, supra, "simply resulted in a continuance of the same body, with the same officers and stockholders, the same property, assets, and business, under a changed jurisdiction."

It is further alleged by the plaintiff that, after the old company had ceased doing business, the Magnolia Company "treated and recognized said agreement with plaintiff as a valid and subsisting agreement, and offered and attempted to make a new agreement between plaintiff and said Magnolia Company, based upon, or as modification of, said former agreement." It is also alleged that the new company knew of the existence of the contract between the plaintiff and the old at the time it took over all the property of the latter, and that with such knowledge it treated and recognized the agreement; and that thereafter the metal was sold in Italy and Austria by the English firm, either as agents or as purchasers from the new company. There is the further allegation that the Magnolia Company paid all the debts of the Anti-Friction Company; and as we can, upon a motion of this kind, look beyond the complaint, we have some evidence in the deposition of one of the officers of that company, from which the inference could be drawn, if such evidence were given upon the trial, that the Magnolia Company assumed the payment of the liabilities of the Anti-Friction Company. There is, therefore, a showing which, if true, would enable the plaintiff upon a trial to charge the Magnolia Company directly with the debt due to him. Upon a motion to vacate an attachment, the sufficiency of

the complaint is not to be discussed and treated with the same elaboration as when the question of its sufficiency is presented upon a demurrer. Undoubtedly, it is the duty of the court to examine the pleading with a view to seeing if it is frivolous, or so barren of substantial averments that no reasonable arguments can be urged in its support. But it would add greatly to the labors of the judges at special term if, upon every motion, the sufficiency of a pleading could be brought in question, and should then be disposed of with the same elaboration as upon a demurrer. We think we have sufficiently indicated our view that the plaintiff has made such a showing that he should not, upon this motion, be turned out of court, but that he is entitled to a hearing upon a trial as to his ability to sustain his cause of action against the appellant.

Our conclusion, therefore, is that the order appealed from should be affirmed, with $10 costs and disbursements.

INGRAHAM and PATTERSON, JJ., concur. McLAUGHLIN. J., dissents.

VAN BRUNT, P. J. (dissenting). Sufficient grounds for the attachment must appear by the affidavit, and the affidavit in this case is clearly insufficient.