GOLDMARK v. MAGNOLIA METAL CO.

(Supreme Court, Appellate Division, First Department.   October 20, 1899.)

1. CORPORATIONS—LIABILITY RESULTING FROM TRANSFER OF ASSETS.
   A corporation cannot be charged with the liabilities of another corporation whose assets have been transferred to it, in the absence of a contract to assume such liabilities, where both corporations continue to maintain a separate existence; nor, in the absence of fraud, will its property be answerable for any judgment against the corporation making the transfer.

2. SAME—ASSUMPTION OF CONTRACT.
   A plaintiff, having a contract with one corporation, who brings suit on such contract against a corporation subsequently formed with the same officers and to conduct the same business, must, in the absence of fraud, or a judgment against the old corporation, prove an agreement with the new corporation to assume the contract he had with the old one.

3. SAME—EVIDENCE.
   Evidence that stockholders of one corporation organized a new corporation in another state, that the assets of the old corporation were transferred to the new one, and that the new corporation was managed in the same way as the old one, will not, in the absence of fraud, warrant an inference that the new corporation assumed a contract made by the old corporation, which did not require any service to be rendered to the old corporation, and by which the new one receives no benefits.

Appeal from trial term, New York county.

Action by Adolph Goldmark against the Magnolia Metal Company. From a judgment entered upon a dismissal of the complaint, plaintiff appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

L. A. Gould, for appellant.

Alexander S. Bacon, for respondent.

RUMSEY, J.    The action was brought against the Magnolia Metal Company and the Magnolia Anti-Friction Metal Company. The Magnolia Metal Company alone answered, and the case came on for trial upon the issues raised by the answer of that company. The

allegations of the complaint were, substantially, that the Anti-Friction Metal Company had been organized as a domestic corporation before the year 1890, and that while so in existence and doing business it had made a contract with the plaintiff relative to the sale of Magnolia metal in Austria and Italy, whereby the plaintiff was entitled to receive from the Anti-Friction Company certain commissions or compensation upon all sales of metal in those countries for some time after the making of the contract. It was alleged that, after this contract had been made, the Anti-Friction Company caused to be organized the Magnolia Metal Company, and transferred all its assets to that company; that the Magnolia Metal Company took over, among other things, the right to manufacture Magnolia metal, which had been owned by the Anti-Friction Company, and continued to manufacture and sell it in Austria and Italy in the same way as the Anti-Friction Company had been accustomed to do, but that it refused to pay the plaintiff the commissions which the Anti-Friction Company had agreed to pay. Certain facts were alleged in the complaint from which it was claimed that there arose an inference that the Magnolia Metal Company had assumed this contract between the plaintiff and the Anti-Friction Company, and had become liable to pay to the plaintiff the commissions which the Anti-Friction Company had agreed to pay. The complaint directly averred that upon the organization of the Magnolia Metal Company and the transfer of assets to it by the Anti-Friction Company, there was no agreement, understanding, or intention on the part of either of said companies to defraud the plaintiff, or to hinder or prevent his recovery of any sum to which he should be found justly and lawfully entitled by reason of the premises. The answer put in issues various allegations of the complaint. Upon the trial the plaintiff offered to prove that the Anti-Friction Company organized, or caused to be organized, the Magnolia Metal Company; that nothing was paid in, or assumed to have been paid in, to the Magnolia Metal Company, except that which was assets of the Anti-Friction Company, and that the Magnolia Metal Company had no other assets; that the stockholders of the Anti-Friction Company were the stockholders of the Magnolia Metal Company; that the managers were the same, and the place of business the same; that the Magnolia Metal Company went on in business of the same nature as the business of the Anti-Friction Company; and that, while the Anti-Friction Company was a New York corporation, the Magnolia Metal Company was a corporation organized under the laws of West Virginia. This proof was objected to, and the court sustained the objection, and excluded the evidence. The plaintiff further offered to prove that after the organization of the Magnolia Metal Company, and after that company had taken over the business of the Anti-Friction Company, its president entered into negotiations with the plaintiff, and talked with him upon the basis that this was a binding and continuing contract as to the defendant. This evidence was objected to, but the court overruled the objection, and permitted the plaintiff to make the proof. The plaintiff, however, offered no evidence in support of those statements, but stated that a proposition was made by the president of the Magnolia

Company to the plaintiff to go on with the contract theretofore made with the Anti-Friction Company upon a reduced basis, but that the plaintiff declined to accept that proposition, and that the Magnolia Metal Company never came to any understanding with him as to a modification of the contract.

Upon this appeal, therefore, there can only be considered the fact, in connection with the other facts offered, that the Magnolia Metal Company proposed to continue with the plaintiff the contract which had been made with the Anti-Friction Company, but that the parties never came to any understanding about it. As the evidence offered was excluded, and the court dismissed the complaint at the close of the offers made by the plaintiff, the case must be determined in view of the evidence offered and which was excluded; and unless that evidence, taken in connection with the admitted allegations of the complaint, would have warranted the jury in finding that the Magnolia Metal Company adopted, either expressly or by necessary inference from its acts, the contract between the Anti-Friction Company and the plaintiff, there can be no recovery in this action. In the consideration of this question it must not be forgotten that these two corporations, the Anti-Friction Company and the Magnolia Metal Company, were distinct legal entities. The one was a domestic corporation, organized under the laws of the state of New York; the other was a West Virginia corporation, organized under the laws of that state. Whatever may have taken place as to the transfer of property from one corporation to the other, it cannot be disputed that they were distinct legal entities; and, in the absence of a contract, the Magnolia Company cannot be charged with any of the liabilities of the Anti-Friction Company; nor, in the absence of fraud, can its property be made answerable for any judgment recovered against the Anti-Friction Company. That was substantially decided by this court when this case was here upon the demurrer. Goldmark v. Metal Co., 30 App. Div. 580, 52 N. Y. Supp. 446. As no fraud is alleged, and no judgment against the Anti-Friction Company has been procured, the plaintiff is not in a position to pursue the property of the Anti-Friction Company in the hands of the Magnolia Metal Company, and to set aside the transfer from one corporation to the other, and he must stand upon the offer of evidence which he claims tended to show that the Magnolia Metal Company adopted this contract between the plaintiff and the Anti-Friction Company. When this case was presented upon the motion to vacate an attachment (28 App. Div. 264, 51 N. Y. Supp. 68), it was said that the allegations of the complaint were sufficient to enable the plaintiff to charge the Magnolia Metal Company directly with the debt due to him. But the allegations of the complaint which were referred to in that connection were, substantially, that the Magnolia Metal Company treated and recognized said agreement with plaintiff as a valid and subsisting agreement, and attempted to make a new agreement between plaintiff and said Magnolia Metal Company based upon, or as a modification of, said former agreement. There was no proof of this fact upon this trial, and there was no offer to prove anything of the kind; but, on the contrary, the offer was to prove that

the plaintiff did not make an agreement with the Magnolia Metal Company; and there was no direct offer to prove that the Magnolia Metal Company treated this contract as a valid subsisting contract. It is to be noticed that the contract between the Anti-Friction Company and the plaintiff did not call for the performance of any services by the plaintiff for that company. The contract simply consisted in an agreement by which the plaintiff was to receive a certain commission for metal sold in Austria and Italy, without doing anything on his part, and simply because of his release to the Anti-Friction Company of a claim for other commissions which it had contracted to pay him. There is, therefore, no ground for any claim that the Magnolia Metal Company received any benefit from the services of the plaintiff, after its organization, which would raise an equity in favor of the plaintiff to be paid for anything he did for it, because he did nothing for it. The question, then, simply resolves itself into this: Whether proof that the stockholders of the Anti-Friction Company organized another company in another state, turning over the assets of the first company to the new one, managing the new one in the same way and by the same persons who managed the old one, carrying on the same business in the same place, without any intent to hinder, delay, or defraud the creditors of the old company, will warrant an inference that the new company adopted a contract with the old company which did not call for the rendition of any services for the old company, and by virtue of which no services were performed for the new company, and no benefits received by it. It hardly seems necessary to argue that no contract relation exists by virtue of these facts between the old company and one who had dealt with the old company. The two companies are legally entirely separate one from the other, and no different relation arises between the new company and those who have dealt with the old one than would arise between the creditors of an individual and one to whom he has transferred his property. In such a case as that, nobody would claim that, in the absence of fraud, actual or constructive, the transferee of the property would be called upon to pay the creditors of the individual who transferred it to him.

The cases cited by the appellant in this regard are clearly distinguishable. The case of Bank v. Claggett, 141 U. S. 520, 12 Sup. Ct. 60, stood purely upon the provisions of the national banking act, which established the relation between the creditors of a state bank and the same bank after it had been reorganized under the national banking law. As was said by Ingraham, J., in his opinion in Goldmark v. Metal Co., 30 App. Div. 583, 52 N. Y. Supp. 448:

"The change or conversion of a state bank into a national bank did not close its business of banking, nor destroy its identity or its corporate existence, but simply resulted in a continuance of the same body with the same officers and stockholders, the same property, assets, and banking business, under a changed jurisdiction; that it remained one and the same bank, and went on doing business uninterruptedly, and, therefore, that the national bank was liable for the obligations of the state bank."

This liability arose, however, not because it was a legal inference from the manner in which the transfer was made, but it was the

result of an express provision of the statute that such should be the effect of the transfer. The case of Web Co. v. Dienelt, 133 Pa. St. 585, 19 Atl. 428, went purely upon the question of fraud. It was said by the court in that case that if the transfer by one corporation of all its assets to another was made in good faith, then the verdict must be in favor of the company receiving the transfer, and that a recovery could only be had upon proof of the fact that the transfer was made with a fraudulent intent. In Mor. Priv. Corp. §§ 995, 996, the learned author was discussing a question which is not at all in point in this case, and has no bearing upon it. In the case of Brundred v. Rice, 49 Ohio St. 640, 32 N. E. 169, the decision was that, where the real purpose for which a corporation is formed is to use it as an instrumentality in the accomplishment of an illegal purpose, the fact of incorporation will not avail the promoters as a defense in a suit against them to recover money obtained from the plaintiff by such methods. The case is not in point on this appeal in any possible way. We have examined the other cases cited by the appellant's counsel, and we can see nothing to warrant our holding that the facts offered to be proved in this case would be sufficient to charge the Magnolia Metal Company with any implied liability towards the plaintiff upon the contract which he made with the Anti-Friction Company. The conclusion reached by the learned trial judge, therefore, is correct, and the judgment must be affirmed, with costs. All concur.

